Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste B
Las Vegas, Nevada 89147
Telephone: 702-420-2001
ecf@randazza.com

*Attorneys for Defendants and Counterclaim-Plaintiffs, HonorSociety.org Inc. and Michael Moradian*

RANDAZZA | LEGAL GROUP

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| STUBBS ALDERTON & MARKILES, LLP,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>HONORSOCIETY.ORG INC.; MICHAEL MORADIAN; and DOES 1 to 10 inclusive,<br><br>Defendants and Counterclaim-Plaintiffs. | CASE NO. 2:26-cv-04098-PD<br><br>**Defendants and Counterclaim-Plaintiffs HonorSociety.org Inc. and Michael Moradian's Opposition to Plaintiff and Counterclaim-Defendant Stubbs Alderton & Markiles, LLP's Motion to Dismiss the Counterclaim Pursuant to Federal Rules of Civil Procedure 12(b)(6) and California Code of Civil Procedure § 340.6(a)**<br><br>Trial Date: Not Yet Set<br>Hearing Date: August 7, 2026<br>Hearing Time: 10:00 a.m. |

Defendant and Counterclaim-Plaintiffs HonorSociety.org Inc. ("Honor Society") and Michael Moradian file their Opposition to Plaintiff and Counterclaim-Defendant Stubbs Alderton & Markiles, LLP's ("SAM") Motion to Dismiss the

Counterclaim Pursuant to Federal Rules of Civil Procedure 12(b)(6) and California Code of Civil Procedure § 340.6(a) (ECF No. 13).

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

## TABLE OF CONTENTS


1.0 INTRODUCTION AND BACKGROUND ..... 1

2.0 LEGAL STANDARD ..... 3

3.0 ARGUMENT ..... 4

3.1 California's Law Does Not Apply ..... 4

3.1.1 There is a True Conflict of Laws ..... 5

3.1.2. Mississippi and Nevada Have a Greater Interest than California ..... 10

3.1.3 Cal. Code Civ. Proc. § 340.6 Does Not Apply to the Counterclaims ..... 14

3.1.4 The Counterclaims are Adequately Pled ..... 17

3.1.5. Breach of Contract ..... 18

3.1.6. Tortious Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing ..... 19

3.1.7 Money Had and Received ..... 20

3.1.8. Accounting ..... 21

3.2 The Court Should Grant Leave to Amend ..... 22

4.0 CONCLUSION ..... 23

RANDAZZA | LEGAL GROUP

## TABLE OF AUTHORITIES

**CASES**

*Aalmuhammad v. Lee*,
202 F.3d 1227 (9th Cir. 2000), ....................11, 12

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) ....................4

*Ashland Chem. Co. v. Provence*,
129 Cal. App. 3d 790 (1982) ....................7

*Avidor v. Sutter's Place, Inc.*,
212 Cal. App. 4th 1439 (2013). ....................21

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
107 F.4th 882 (9th Cir. 2024) ....................13

*Cooper v. Tokyo Elec. Power Co. Holdings*,
960 F.3d 549 (9th Cir. 2020) ....................5, 10

*Curtis v. BCI Coca-Cola Enters. Bottling Cos.*,
2014 U.S. Dist. LEXIS 124447 (E.D. Cal. Sept. 5, 2014)....................8

*Deirmenjian v. Deutsche Bank, A.G.*,
2010 U.S. Dist. LEXIS 86957 (C.D. Cal. July 30, 2010) ....................11

*Francis v. Lesko*,
2009 U.S. Dist. LEXIS 141111 (C.D. Cal. Mar. 3, 2009)....................6

*Gallo v. U.S. Dist. Ct. For Dist. of Ariz.*,
349 F.3d 1169 (9th Cir. 2003) ....................8

*Graham v. Franks*,
220 So. 3d 992 (Miss. Ct. App. 2017). ....................21

*Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*,
38 Cal. App. 4th 1532 (1995) ....................6

*Henderson v. Superior Court*,
77 Cal. App. 3d 583 (1978) ....................7

*Herrington v. Super. Ct.*,
107 Cal. App. 4th 1052 (2003), ....................19

*High Country Linens v. Block*,
2002 U.S. Dist. LEXIS 16043 (N.D. Cal. Aug. 19, 2002)....................6

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) ....................4

*Kingdom of Sweden v. Nowacki*,
2015 U.S. Dist. LEXIS 120740 (S.D. Cal. Aug. 28, 2015) ....................6

*Ledesma* v. *Jack Stewart Produce, Inc*.
816 F.2d 482 (9th Cir. 1987) ....................7, 12, 13

*Lee v. Hanley*,
61 Cal. 4th 1225 (2015), ....................14, 15, 17

*Maness v. K&A Enters. of Miss., LLC*,
250 So. 3d 402 (Miss. 2018). ....................18

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68, 97-98 (2010) ....................11

*Milliken & Michaels, Inc. v. Fred Netterville Lumber Co.*,
676 So. 2d 266 (Miss. 1996). ....................20

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
223 Cal. App. 4th 1105 (2014). ....................22

*Reich v. Purcell*,
678 Cal. 2d 551 (1967) ....................5

*Robert McMullan & Son, Inc. v. U.S. Fidelity & Guaranty Co.*,
103 Cal. App. 3d 198 (1980) ....................10

RANDAZZA | LEGAL GROUP

*Robin v. Google LLC*,
725 F.Supp.3d 1028 (N.D. Cal. Mar. 26, 2024) ....................................................4

*Rosenthal v. Fonda*,
862 F.2d 1398 (9th Cir. 1988) ....................................................................12

*Schultz v. Harney*,
27 Cal. App. 4th 1611 (1994), ....................................................................21

*Smith v. Cimmet*,
199 Cal. App. 4th 1381 (2011) ....................................................................7

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ....................................................................4

*Welles v. Turner Entm't Co.*,
503 F.3d 728 (9th Cir. 2007) ....................................................................9

**STATUTES**

Cal. Civ. Code § 1646 ....................................................................8
Cal. Code Civ. Proc. § 340.6 ....................................................................*passim*

**RULES**

Fed. R. Civ. P. 12 ....................................................................3, 4
Miss. Rules of Pro. Conduct 83.5 ....................................................................8
N.D. Miss. L.R. 83.5 ....................................................................8
S.D. Miss. L.R. 83.5 ....................................................................8

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0 INTRODUCTION AND BACKGROUND

Honor Society, a Nevada entity, was a party in a lawsuit filed by Phi Theta Kappa Honor Society in the U.S. District Court for the Southern District of Mississippi, No. 3:22-cv-00208 (the "S.D. Miss. Case"). ECF No. 4 at Counterclaim ¶ 7. Counterclaim-Plaintiffs retained SAM specifically for this litigation, and for no other services. *Id*. at Counterclaim ¶¶ 8–9; ECF No. 1-1 at 8–12. While representing Counterclaim-Defendants, SAM's attorneys engaged in multiple breaches of their contractual obligations, including:

- Undertaking a failed litigation strategy by asserting doomed counterclaims and third-party claims and filing unnecessary and actively harmful motions (ECF No. 4 at Counterclaim ¶¶ 11, 16);
- Transferring eDiscovery platforms, causing wasted and duplicative efforts and resulting in excessive billing (*id*. at ¶ 12);
- Generally engaging in excessive billing and using higher-billing attorneys for tasks that should have been assigned to lower-billing personnel (*id*. at ¶¶ 18–20);
- Continuing to bill Counterclaim-Plaintiffs significant sums every month from late April/May to August 2024, despite claiming that their "involvement in the case effectively ceased by late April/May 2024" (*id*. at ¶¶ 23–25); and

RANDAZZA | LEGAL GROUP

- Not actually performing the work its attorneys claimed to perform in its invoices to Counterclaim-Plaintiffs, or at least grossly overbilling for such work. (*id*. at ¶ 27).

SAM briefly asserts that Counterclaim-Plaintiffs' claims are not adequately alleged. The meat of their motion, however, is the contention that the 1-year California statute of limitations under Cal. Code Civ. Proc. § 340.6 applies and bars all these claims. SAM asserts that "[w]hile the action was pending in Mississippi, the vast majority of the work performed by SAM was in California, with the assistance of local Mississippi counsel (not affiliated with SAM)." ECF No. 13 at 8. This alleged fact appears nowhere in the Complaint or Counterclaim, and Counterclaim-Plaintiffs are not aware of where SAM's attorneys physically were while performing work for the S.D. Miss. Case.

Even if they were sitting in California for most of this work, however, the fact remains that all the work performed was for litigation pending in Mississippi for a client located in Nevada. And significant portions of these legal services, such as appearances at hearings, status conferences, and depositions must have either happened in Mississippi (if conducted in-person) or required remote appearances by SAM attorneys to a virtual courtroom in Mississippi. SAM's attorneys did not merely work on the sidelines and provide remote drafting and research work for Mississippi counsel; attorneys Michael A. Bernet and Daniel Rozansky of SAM

RANDAZZA | LEGAL GROUP

appeared *pro hac vice*. ECF No. 4 at Counterclaim ¶ 10. This leads to the reasonable inference that SAM's attorneys signed documents filed in the S.D. Miss. Case and appeared on behalf of Honor Society in hearings and other court appearances in that case, but if the Court finds more specific allegations on this point are necessary, Counterclaim-Plaintiffs are happy to provide them in an amended Counterclaim.

SAM claims that "Honor Society concedes that SAM effectively ceased providing further legal work to Honor Society by no later than April/May, 2024." ECF No. 13 at 10. This is false. Counterclaim-Plaintiffs allege that SAM *claims* to have "effectively ceased" its involvement in the S.D. Miss. Case by this time, yet "it continued to bill Counterclaim-Plaintiffs significant amounts every month from March to August 2024." ECF No. 4 at Counterclaim ¶¶ 23–24. In reality, SAM continued to serve as counsel for Honor Society until August 27, 2024, when attorneys Bernet and Rozansky's appearances in the S.D. Miss. Case were terminated. *Id.* at Counterclaim ¶ 26.

## 2.0 LEGAL STANDARD

The Court is well-aware of the *Iqbal/Twombly* plausibility standard in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Court must accept the complaint's factual allegations as true and may only grant the motion if the complaint fails to allege facts that state a plausible claim for relief. The expiration of the statute of limitations is an affirmative defense, and so a court may only grant

a 12(b)(6) motion on such grounds where "'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). To defeat a motion to dismiss based on an affirmative defense, a plaintiff "simply need[s] to plead facts demonstrating a potential factual dispute that could affect whether the defense applies." *Robin v. Google LLC*, 725 F.Supp.3d 1028, 1031 (N.D. Cal. Mar. 26, 2024); *see also ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("If, from the allegations of the complaint . . . an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper").

**3.0 ARGUMENT**

**3.1 California's Law Does Not Apply**

SAM's principal argument is that the 1-year statute of limitations under Cal. Code Civ. Proc. § 340.6 applies to all causes of action in the Counterclaim, and thus all claims are time-barred.[1] This is predicated on a choice-of-law analysis that itself rests on nothing more than the default rule that California's statute of limitations

[1] It is worth making a factual correction. SAM repeatedly states that the clock began to run on the Counterclaim-Plaintiffs' claims in April or May 2024, but this is false. Cal. Code Civ. Proc. § 340.6(a)(2) tolls the statute of limitations while "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." SAM's attorneys did not withdraw as counsel for Honor Society in the S.D. Miss. Case until August 27, 2024. ECF No. 4 at Counterclaim ¶ 26. The clock did not start until this withdrawal.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

applies when California is the forum state and the defendant resides in California. Counterclaim-Plaintiffs agree that California's government interest test applies for the choice-of-law analysis, in which the court (1) determines whether there is a difference in substantive law between the states, then (2) determine what interest (if any) the states have in applying their own law to discern whether a "true" conflict exists, and if so, (3) '"identify and apply the law of the state whose interest would be the more impaired if its laws were not applied.'" *Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 559 (9th Cir. 2020) (quoting *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989)).

Counterclaim-Plaintiffs agree that the relevant law between California, Mississippi, and Nevada are different; application of California's statute of limitations may bar at least some of the counterclaims, whereas application of the Mississippi or Nevada statutes would not.

**3.1.1 There is a True Conflict of Laws**

SAM argues that there is no true conflict on this issue because only California has an interest in applying its statute of limitations because it is the forum state and the only defendant resides in California. That is wildly wrong. The California Supreme Court determined decades ago that where the conduct alleged occurs within a state's borders, that state "has the predominant interest of the states involved." *Reich v. Purcell*, 678 Cal. 2d 551, 556 (1967). While it is true that "[a] court is less

RANDAZZA | LEGAL GROUP

likely to find a true conflict when there are no defendants from the foreign state and the foreign state is not the forum, . . . these factors alone are not dispositive." *Kingdom of Sweden v. Nowacki*, 2015 U.S. Dist. LEXIS 120740, *13–14 (S.D. Cal. Aug. 28, 2015) (in case with California defendant, applying Sweden's longer statute of limitations for student loan collections actions); *Francis v. Lesko*, 2009 U.S. Dist. LEXIS 141111, *8–9 (C.D. Cal. Mar. 3, 2009) (regarding torts that occurred in Florida, applying Florida statute of limitations to claims that would be time-barred under California law); *High Country Linens v. Block*, 2002 U.S. Dist. LEXIS 16043, *9–10 (N.D. Cal. Aug. 19, 2002) (finding New York had a sufficient interest to create a true conflict where "a New York entity is pursuing a claim against a California defendant for injuries that could have occurred, at least in part, in New York")[2]; *Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*, 38 Cal. App. 4th 1532, 1548-49 (1995) ("[W]e can discern no fundamental state policy against applying a foreign jurisdiction's statutes of limitations to claims brought within California courts. Significantly, in the absence of a choice-of-law provision, California's conflict of laws principles recognize that it may be appropriate to apply a foreign state's statute of limitations rather than California's); *Henderson v.*

[2] While the *Block* court found that California had a greater interest than New York, it did so because the plaintiff was licensed to do business in California and owned a large distribution facility in California. *Id*. at *10. Those circumstances are lacking in the present case.

RANDAZZA | LEGAL GROUP

*Superior Court*, 77 Cal. App. 3d 583, 592–93 (1978) (applying Florida statutes of limitations); *Ledesma* v. *Jack Stewart Produce, Inc*. 816 F.2d 482, 486 (9th Cir. 1987) (applying Arizona statute of limitations using California conflicts of laws principles). The *per se* rule SAM insists on does not exist.

To be sure, California has an interest in applying its own statute of limitations where it is the forum, as doing so helps to preclude prosecution of "stale claims." *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982). SAM also cites *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1399–1400 (2011), for the proposition that '"California alone has a legitimate interest in' the regulation of its attorneys." ECF No. 13 at 18. But *Cimmet* dealt with a very different set of facts; the Oregon plaintiff sued a California attorney for malpractice based on representation *in California litigation*. After noting that California had no interest in protecting the non-resident plaintiff, the court found "California does have an interest in regulating attorneys **practicing here**, even those attorneys retained by Oregon clients." *Cimmet*, 199 Cal. App. 4th at 1400 (emphasis added). California's interest "was strong here, where there was alleged malpractice by attorneys licensed in California who filed suit in California against a California defendant concerning a California business." *Id*. The court found Oregon had no interest in regulating California attorney, but it did so because there was no Oregon litigation to begin with.

RANDAZZA | LEGAL GROUP

Here, the logic is the same, but the facts are reversed. SAM's attorneys were admitted *pro hac vice* in Mississippi in a case that had no connection whatsoever to California, other than the incidental fact SAM's attorneys were licensed in the state. Federal district courts have a significant interest in regulating the conduct of attorneys appearing before them. *Gallo v. U.S. Dist. Ct. For Dist. of Ariz.*, 349 F.3d 1169, 1185 (9th Cir. 2003) ("Requiring either membership in the State Bar of Arizona or *pro hac vice* status is rationally tailored to serve the District Court's legitimate interest in regulating the conduct and ethical fitness of lawyers who practice before it"); *Curtis v. BCI Coca-Cola Enters. Bottling Cos.*, 2014 U.S. Dist. LEXIS 124447, *10 (E.D. Cal. Sept. 5, 2014) ("[T]he application to appear pro hac vice is a requirement which is designed to protect the integrity of the Court and to allow courts to enforce the standards which they have adopted for admissions of attorneys to practice on a case-by-case basis"). Pursuant to Local Rule 83.5 of the Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, the United States District Court for the Southern District of Mississippi adopted the Mississippi Rules of Professional Conduct. Those rules (at Rule 83.5(c)(1)) govern "any attorney" practicing before that court's bar, necessarily including attorneys practicing on a *pro hac vice* basis.

SAM's position is further undermined by California law itself; per Cal. Civ. Code § 1646, "[a] contract is to be interpreted according to the law and usage of the

place where it is to be performed[.]" "When the contract does not expressly specify a place of performance, … the place of performance is the jurisdiction in which the circumstances indicate the parties expected or intended the contract to be performed." *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007). In *Welles*, the location of the movie studio where the films at issue were made governed. Here, the only place contemplated by the contract with SAM was the Southern District of Mississippi.

Relatedly, Nevada, as Counterclaim-Plaintiffs' state of residence, also has a legitimate interest in ensuring that its residents are able to seek relief against attorneys who do not fulfill their professional or contractual obligation. SAM seems to believe that California law should apply to California attorneys, no matter where they roam, and no matter who they harm while roaming. That makes no sense.

Another problem with SAM's argument is its reliance on the fact that California is the forum, which SAM frames as a deliberate choice on Counterclaim-Plaintiffs' part. This fact is of lessened significance here, however, because Counterclaim-Plaintiffs' claims are compulsory counterclaims. They did not choose this forum, but rather were required to assert their counterclaims in this forum because SAM first sued them in California. Counterclaim-Plaintiffs could have filed this case in Nevada or Mississippi, and the fact that SAM won the race to the courthouse should not be outcome-determinative. All of SAM's cases regarding



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

California's default rule for applying its statutes of limitations are thus distinguishable. And for this reason, if the Court is inclined to rule that California's statute of limitations applies because California is the forum, it should dismiss Counterclaim-Plaintiffs' claims without prejudice so that they can assert them in Mississippi.

There is thus a true conflict here because California (as the compelled forum and SAM's residence), Mississippi (as the place where SAM's services were performed and where SAM's attorneys were admitted *pro hac vice*), and Nevada (as Defendants' residence) all have a legitimate interest in applying their own statute of limitations to the Counterclaim. We thus move to the third step, where the Court must determine "the state whose interest would be the more impaired if its laws were not applied." *Cooper*, 960 F.3d at 559.

**3.1.2 Mississippi and Nevada Have a Greater Interest than California**

The contacts a given state has to the dispute are relevant in the governmental interest test. *See Robert McMullan & Son, Inc. v. U.S. Fidelity & Guaranty Co.*, 103 Cal. App. 3d 198, 204 (1980) ("[W]ith the governmental interest approach, 'relevant contacts' . . . are not disregarded, but are examined in connection with the analysis of the interest of the involved state in the issues. . ."). And while the location of the alleged tortious conduct is not dispositive, "California choice-of-law cases

nonetheless continue to recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders, and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97-98 (2010) (citations omitted); *Deirmenjian v. Deutsche Bank, A.G.*, 2010 U.S. Dist. LEXIS 86957, *60–61 (C.D. Cal. July 30, 2010) (following *McCann* and applying Turkish statute of limitations because "[i]t was in Turkish territory that the acts giving rise to the suit occurred," and thus "Turkey's interest would be more impaired if its laws were not applied than would California's interest if its statute of limitations were not applied").

The most directly relevant case on this conflict is *Aalmuhammad v. Lee*, 202 F.3d 1227, 1237 (9th Cir. 2000), where the Ninth Circuit applied New York's longer statute of limitations instead of California's shorter one even though the suit was brought in California against a California defendant because "New York's connection with [plaintiff]'s claim [regarding a movie script] is considerably more substantial, immediate and concrete than California's" because the movie was filmed in New York. The court found "California's interest in protecting its residents from stale claims arising from work done outside the state is a weak one: 'the



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

residence of the parties is not the determining factor in a choice of law analysis.' New York's interest in governing the remedies available to parties working in New York is far more significant. New York's connection with Aalmuhammed's claim is considerably more substantial, immediate and concrete than California's. We conclude that New York would suffer more damage to its interest if California law were applied than would California if New York law were applied." *Id*. Similarly, the court in *Rosenthal v. Fonda*, 862 F.2d 1398, 1402–1403 (9th Cir. 1988), applied New York's statute of frauds regarding a breach of oral contract claim against a California attorney defendant because the majority of work performed by the defendant was performed in New York.

In *Ledesma*, 816 F.2d at 485–86, the Ninth Circuit held that Arizona's two-year statute of limitations (where the relevant auto accident occurred) should apply over California's one-year statute of limitations (where the plaintiffs were residents) to non-resident defendants, even though applying California's statute would bar the claims. In describing Arizona's interests, the court found that "[i]nsofar as drivers tend to be more careful when their chances of incurring liability are more substantial, Arizona does have an interest in ensuring that its statute of limitations is applied in any case that arises from accidents occurring within its borders. Were we to apply the California statute of limitations in this case, we would impede the legitimate interest of the state of Arizona in promoting highway safety by allowing a cause of

action for a two-year period." *Id.* at 486. It is also significant that both SAM and Counterclaim-Plaintiffs willingly engaged in conduct in Mississippi underlying this dispute. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 107 F.4th 882, 891 (9th Cir. 2024) (summarizing California Supreme Court cases finding that "because a plaintiff voluntarily entered the other jurisdiction and was there, it is reasonable to apply that other jurisdiction's law").

Mississippi has a strong governmental interest in ensuring that attorneys who appear in its courts conduct themselves ethically and in conformity with their professional obligations. Admission *pro hac vice* in the S.D. Miss. Case court is a privilege, and the harm Counterclaim-Plaintiffs suffered was due to SAM's abuse of that privilege. All the work SAM provided was for the S.D. Miss. Case, regardless of whether SAM's attorneys were physically in Mississippi while performing it. While SAM claims it performed its representation of Counterclaim-Plaintiffs in the S.D. Miss. Case in California, such allegation is found nowhere in SAM's Complaint or the Counterclaim. To the extent it is relevant where SAM's attorneys and staff physically were while performing work for the S.D. Miss. Case (Counterclaim-Plaintiffs contend it is not) Counterclaim-Plaintiffs dispute this. They do not know where SAM's attorneys and staff were while performing this work, and the Court cannot infer that these attorneys and staff were always in California at such times when working for a case pending in Mississippi. It is thus not evident on the face of

RANDAZZA | LEGAL GROUP

the Counterclaim that California's statute of limitations applies, as discovery would be needed to determine where SAM's attorneys and staff were when performing work in the S.D. Miss. Case. These factual disputes preclude dismissing the case at this stage.

California has no relevant interest here in compensating victims because Counterclaim-Plaintiffs are not, and never were, California residents. For that reason, Nevada also has a stronger interest than California in having its statute of limitations applied. Any interest California has in regulating attorney conduct is minimized here because all of SAM's misconduct occurred in the course of Mississippi, not California, litigation, and no California courts were involved at any point. As it relates to the S.D. Miss. Case, California's relationship to this case is merely incidental. Even California's role as a forum for the counterclaims is incidental, as Counterclaim-Plaintiffs did not initiate litigation here. SAM filed its Complaint in California, and so Counterclaim-Plaintiffs were required to assert counterclaims here because they were compulsory.

#### 3.1.3 Cal. Code Civ. Proc. § 340.6 Does Not Apply to the Counterclaims

Even if California law applied, the counterclaims are not time-barred. The California Supreme Court in *Lee v. Hanley*, 61 Cal. 4th 1225, 1236–37 (2015), held that "section 340.6(a)'s time bar applies to claims whose merits necessarily depend



RANDAZZA | LEGAL GROUP

on proof that an attorney violated a professional obligation in the course of providing professional services. In this context, a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the State Bar Rules of Professional Conduct." However, the *Hanley* court actually reversed the dismissal of one of the claims at issue on timeliness grounds. The plaintiff brought a conversion claim, which the court found "may be construed to allege that Hanley is liable for conversion for simply refusing to return an identifiable sum of Lee's money." *Id*. at 1240. The court found that, while this claim might also establish a violation of certain professional obligations of the attorney defendant, "because Lee's claim of conversion does not necessarily depend on proof that Hanley violated a professional obligation, her suit is not barred by section 340.6(a)."

Just as in *Hanley*, none of the claims asserted in the Counterclaim necessarily rely on the violation of a professional obligation. While the first and second claims for relief (breach and tortious breach of contract) refer to breaches of ethical duties, they also repeat all preceding allegations by reference. Such allegations include SAM billing for work it never performed and falsely claiming in its invoices that it actually performed such work. ECF No. 4 at Counterclaim ¶¶ 24–27. Charging for



RANDAZZA | LEGAL GROUP

work never performed may overlap with a violation of a lawyer's professional obligations, but it is also conduct that would constitute a breach of contract in any other context.

There is no question that the remaining claims fall outside the scope of Section 340.6. The third claim for relief (breach of covenant of good faith and fair dealing), alleges merely that SAM "acted in bad faith when it overbilled Counterclaim-Plaintiffs" and did so "intentionally, willfully, wantonly, and/or in reckless disregard for the rights of Counterclaim-Plaintiffs." ECF No. 4 at Counterclaim ¶¶ 47–48. The fourth claim for relief (money had and received) alleges that "Counterclaim-Plaintiffs paid [SAM] in excess of $100,000 beyond what was duly owed under the agreement due to a mistake of fact, *i.e.* the misrepresentations on [SAM's] invoices that such was actually due and owing," and that SAM should not be allowed to retain such overpayments. *Id.* at Counterclaim ¶¶ 53–54. The fifth claim for relief (accounting) alleges Counterclaim-Plaintiffs overpaid SAM and are thus "entitled to an accounting of all funds paid to Counterclaim-Defendant and a judgment of the amount found due upon the accounting." *Id.* at Counterclaim ¶¶ 57–58. None of these three claims necessarily rely on the violation of a professional obligation on the part of SAM; the allegations are that SAM overbilled Counterclaim-Defendants, who then mistakenly overpaid SAM.

RANDAZZA | LEGAL GROUP

While the general factual allegations make reference to the rules of professional conduct, not all of the alleged conduct involves violations of these rules. SAM's transfer of eDiscovery platforms without Counterclaim-Plaintiffs' informed consent led to excessive billing which is separately actionable apart from any professional obligations it may have also violated. ECF No. 4 at Counterclaim ¶¶ 12–13. Furthermore, the allegations regarding excessive staffing and duplication of efforts without Counterclaim-Plaintiffs' informed consent, leading to billing inflation, do not necessarily involve violations of professional obligations. ECF No. 4 at ¶¶ 18–21. These claims fall outside the scope of Cal. Code Civ. Proc. § 340.6(a) as defined in *Hanley*. Significant portions of the counterclaims are not based on violations of professional obligations, but instead are generic business disputes. The categorical application of the one-year statute of limitations simply because some, but not all, claims may be related, in part, to the provision of professional services, which Plaintiff insists is the law, reads more like the position advanced in the *Hanley* dissent, not the majority. Thus, the counterclaims should not be dismissed as time-barred.

#### 3.1.4 The Counterclaims are Adequately Pled

SAM's motion, citing California law exclusively, argues that none of Counterclaim-Plaintiffs' causes of action are adequately pled. SAM is being presumptuous because, as explained above, California law does not apply here. The



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

Motion thus fails to argue that, under Mississippi law, any of the claims are deficient. Even if we were to apply California law, SAM's arguments fail.

**3.1.5 Breach of Contract**

SAM first argues that Counterclaim-Plaintiffs do not allege the terms of the contract with SAM and do not allege that they performed their obligations under it.[3] SAM is wrong. The agreement (ECF No. 1-1 at 8–12) is incorporated by reference in the Counterclaim. ECF No. 4 at Counterclaim ¶ 8. The agreement states SAM "will provide those legal services reasonably required to represent you in connection with the [S.D. Miss. Case] and will keep you informed of our progress and respond to all inquiries." ECF No. 1-1 at 8. The Counterclaim also alleges SAM "had a duty to perform the agreement competently and with diligence" at all times. ECF No. 4 at Counterclaim ¶ 30. The terms of the contract are thus adequately alleged. So, too, is Counterclaim-Plaintiffs' performance. Counterclaim-Plaintiffs were required to pay SAM for its services. ECF No. 1-1 at 8–10. They did so, and in fact overpaid SAM by more than $100,000. ECF No. 4 at Counterclaim ¶¶ 35, 42, 49, 53, & p. 17.

SAM then argues it is unclear what contractual obligations they breached because the contract's terms are not set out. As explained above, those terms are specifically identified and incorporated by reference. The claim is premised on

[3] Performance by the plaintiff is not an element under Mississippi law. *Maness v. K&A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018).

RANDAZZA | LEGAL GROUP

SAM's breach of its duties of competence and diligence. ECF No. 4 at Counterclaim ¶¶ 30–34.

Finally, SAM argues that Counterclaim-Plaintiffs have not alleged failure to receive the benefits of SAM's services. First, they have. ECF No. 4 at Counterclaim ¶¶ 12–15, 18–20, 24–25, 27 (alleging wasteful and duplicative billing and that "Counterclaim-Plaintiffs did not actually perform this work or, if it provided any of the claimed services, it grossly overbilled for such work"). Second, the only case SAM cites, *Herrington v. Super. Ct.,* 107 Cal. App. 4th 1052, 1060 (2003), merely establishes a potential limitation on damages; it has nothing to do with establishing an element of a breach of contract claim. This claim is adequately pled.

**3.1.6 Tortious Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing**

SAM argues the tortious breach of contract claim is merely the breach of contract claim "dressed up in different language" and fails to allege an independent tort duty. The Counterclaim alleges that SAM's breaches were accompanied by intentional and knowingly false misrepresentations on the invoices, which Honor Society relied upon in making payments, along with breaches of the duty of loyalty in the form of placing SAM's interests over Honor Society's. ECF No. 4 at Counterclaim ¶¶ 39–40. These allegations spell out tortious conduct independent of contractual obligations. While SAM argues this claim amounts to no more than

RANDAZZA | LEGAL GROUP

disagreement about the reasonableness of the fees SAM charged, a law firm violating its fiduciary duties by lying about the work it has performed and then charging its client for such non-existent work goes beyond a breach of contractual obligations and is tortious.

For the same reasons, SAM's arguments regarding the covenant of good faith and fair dealing are unavailing. They rest on the contention that Counterclaim-Plaintiffs do not allege any conduct above and beyond breach of contractual duties. As explained above, however, SAM lying to its client in the S.D. Miss. Case and charging for work it never performed goes beyond a mere breach of contract.

**3.1.7 Money Had and Received**

Under Mississippi law, "[m]oney paid to another by mistake of fact . . . may be recovered from the person to whom it was paid, in an action for money had and received." *Milliken & Michaels, Inc. v. Fred Netterville Lumber Co.*, 676 So. 2d 266, 269 (Miss. 1996). The Counterclaim alleges that Honor Society paid SAM more than $100,000 beyond what was owed "due to a mistake of fact, *i.e.*, the misrepresentations on Counterclaim-Defendant's invoices that such was actually due and owing," and that in equity and good conscience SAM may not retain the overpayments. ECF No. 4 at Counterclaim ¶¶ 53–55.

SAM's argument under California law fares no better. Money had and received is a viable claim "wherever one person has received money which belongs

RANDAZZA | LEGAL GROUP

to another, and which in equity and good conscience should be paid over to the latter." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013). SAM's assertion that the count is available *only* "where funds are transferred for one purpose but diverted for another" (ECF No. 13 at 24) has no support. This cause of action is a vehicle for recovering overpayments procured by mistakes of fact or false representations. Indeed, SAM's own cited authority, *Schultz v. Harney*, 27 Cal. App. 4th 1611 (1994), applied the count in a client's action to recover improper fees taken by an attorney. The "indebtedness" element is satisfied by the allegation that SAM holds more than $100,000 of Honor Society's money that it obtained by billing for work it did not actually perform or grossly overbilled. ECF No. 4 at Counterclaim ¶¶ 27, 53. Money paid in reliance on false invoices for phantom work is not, as SAM claims, payment "for services that Honor Society already received." The whole point of the claim is that the services were never received.

**3.1.8 Accounting**

Mississippi law permits a client who overpays counsel to bring an action for accounting and recovery of funds by judgment thereon. *Graham v. Franks*, 220 So. 3d 992, 994 (Miss. Ct. App. 2017). SAM does not address this.

Under California law, an accounting lies where the relationship between the parties (here, the fiduciary attorney-client relationship) or the complexity of the accounts makes the amount owed unascertainable without an examination of the

RANDAZZA | LEGAL GROUP

defendant's books. *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1136–37 (2014). To receive this equitable remedy, the plaintiff must show "[s]ome underlying misconduct on the part of the defendant . . ." *Id*. at 1137.

SAM argues the overcharges are "ascertainable" from its invoices, but that argument refutes itself. The Counterclaim's central allegation is that the invoices are *false* — that they describe work "allegedly performed" that was not performed and that were inflated due to unnecessary eDiscovery migration and excessive and inefficient staffing. ECF No. 4 at Counterclaim ¶¶ 12–21, 27. Only through discovery, including deposing the attorneys and staff who billed for alleged work on the S.D. Miss. Case and review of SAM's records, can Counterclaim-Plaintiffs determine which charges were legitimate. The sum is unliquidated and unascertained within the meaning of *Prakashpalan*. The uncertain nature of the amounts legitimately charged to Honor Society combined with SAM's misconduct in billing for work it never performed entitle Counterclaim-Plaintiffs to an accounting.

### 3.2 The Court Should Grant Leave to Amend

SAM argues the Court should dismiss all causes of action in the Counterclaim without leave to amend because Counterclaim-Plaintiffs cannot cure the statute of limitations issue through amendment. As explained above, however, there are disputed facts regarding California's connection to these claims, namely where SAM's attorneys and staff were when performing such work. If the Court finds that

RANDAZZA | LEGAL GROUP

their physical location while performing work on the S.D. Miss. Case is relevant to the choice of law analysis and if it is inclined to find that California's statute of limitations applies, it should grant Counterclaim-Plaintiffs leave to amend to include more detailed factual allegations regarding the location and extent of SAM's involvement with Mississippi.

## 4.0 CONCLUSION

For the foregoing reasons, the Court should deny SAM's motion to dismiss in its entirety and permit Counterclaim-Plaintiffs' counterclaims to proceed to discovery. If the Court is inclined to grant any portion of the motion, it should grant Counterclaim-Plaintiffs leave to amend.

Dated: July 17, 2026.

Respectfully Submitted,

/s/ Alex J. Shepard
Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Road, Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendants and Counterclaim-Plaintiffs, HonorSociety.org Inc., and Michael Moradian

RANDAZZA | LEGAL GROUP

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Counterclaim-Plaintiffs, certifies that this brief contains 5,430 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 17, 2026

Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Alex J. Shepard

Alex J. Shepard, SBN 295058

RANDAZZA | LEGAL GROUP

Case No. 2:26-cv-04098-PD

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 17, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notice of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Alex J. Shepard
Alex J. Shepard